UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDWARD J. O'HARA,<br><br>         Plaintiff,<br><br>    v.<br><br>MORTGAGEIT, INC.; U.S. BANK NATIONAL ASSOCIATION as Trustee for LXS 2006-12N; INDYMAC BANCORP, INC. a Unit of one West Bank that is now a division of CIT BANK, N.A.; OCWEN LOAN SERVICING, INC.; CITIBANK, N.A. as Trustee for MLMI Trust Series 2006-HE5; LEOPOLD & ASSOCIATES PLLC; HINSHAW & CULBERTSON, LLP,<br><br>         Defendants. | No. 3:18-cv-01672 (MPS)<br><br><br><br><br><br>September 24, 2019 |

**RULING ON MOTIONS TO DISMISS**

*Pro se* plaintiff Edward J. O'Hara brought this action on October 9, 2018 against

Defendants MortgageIT, Inc.; U.S. Bank National Association as Trustee for LXS 2006-12N;

IndyMac Bancorp, Inc., a Unit of OneWest Bank that is now a division of CIT Bank, N.A.;

Ocwen Loan Servicing, Inc.; Citibank, N.A. as Trustee for MLMI Trust Series 2006-HE5;

Leopold & Associates, PLLC, a multistate law firm; and Hinshaw & Culbertson, LLP, a national

law firm (together, "Defendants"). Complaint, ECF No. 1. Mr. O'Hara alleges that the

Defendants improperly securitized his Note and Mortgage and then brought a fraudulent

foreclosure action against him. His Complaint alleges violations of various federal and state

laws, including the First, Fifth, and Fourteenth Amendments to the U.S. Constitution; 42 U.S.C.

§§ 1983 and 1985–86; the Truth in Lending Act (TILA); the Fair Debt Collection Practices Act

(FDCPA); the Federal Tort Claims Act (FTCA); fraudulent conveyance; abuse of process; and

unfair business practices and failure to prevent deprivations of rights.

1

Defendants U.S. Bank National Association as Trustee for LXS 2006-12N ("U.S. Bank"), Ocwen Loan Servicing, LLC (named "Ocwen Loan Servicing, Inc." in the Complaint) ("Ocwen"), and Hinshaw & Culbertson LLP ("Hinshaw") moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) on December 12, 2018. *See* U.S. Bank Mot. to Dismiss, ECF No. 10. Defendant CIT Bank, N.A. (named "IndyMac Bancorp, Inc." in the Complaint) ("CIT Bank") moved to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on December 31, 2018, for substantially the same reasons. *See* CIT Bank Mot. to Dismiss, ECF No. 16.  Mr. O'Hara filed objections to both motions. ECF Nos. 23, 27. Defendants MortgageIT, Inc. ("MortgageIT"), Citibank, N.A. as Trustee for MLMI Trust Series 2006-HE5 ("Citibank"), and Leopold & Associates PLLC ("Leopold & Associates") have not appeared in this case.[1]

For the reasons below, the Court GRANTS both motions to dismiss without prejudice.

## I.    BACKGROUND

In October 2013, Defendant U.S. Bank, as Trustee, brought a foreclosure action against Mr. O'Hara in the Superior Court of Connecticut, seeking to foreclose on residential property located at 1414 King Street, Greenwich, Connecticut. *U.S. Bank Nat'l Ass'n, as Trustee for the LXS 2006-12N v. O'Hara*, Superior Court, Judicial District of Stamford, No. FST-CV13-6020232-S (the "State Foreclosure Action"). Mr. O'Hara appeared in that action, filed an Answer with Special Defenses, and the court entered a judgment of foreclosure by sale in December 2015. U.S. Bank Mem., ECF No. 11 at 2. The Court takes judicial notice of the court documents and rulings in the State Foreclosure Action. *See Kramer v. Time Warner Inc.*, 937

---

[1] Mr. O'Hara filed on the docket Proof of Service on MortgageIT, ECF No. 19 at 7–8, on Citibank, ECF No. 19 at 5–6, and on Leopold & Associates, ECF No. 20 at 5–6. Those documents state that the process server attempted service only by putting documents in the U.S. mail, addressed to the entity at a business address. As discussed below, this method of service does not comply with Fed. R. Civ. P. 4(h).

F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other

courts . . . not for the truth of the matters asserted in the other litigation, but rather to establish the

fact of such litigation and related filings.") (citations omitted). The state trial court opened the

judgment in June 2016, and the case remains pending. U.S. Bank Mem., ECF No. 11 at 3.

Mr. O'Hara's Complaint makes the following allegations, which I accept as true for

purposes of this motion. The complaint alleges, in sum, that the Defendants improperly

securitized his Note and Mortgage, and that the foreclosure action against him was fraudulent as

a consequence. On or about May 6, 2006, Mr. O'Hara signed a Note and Mortgage originated by

MortgageIT, Inc. Compl., ECF No. 1 ¶¶ 21, 23. He alleges that MortgageIT sold the loan in 2006

to Lehman Brothers Holdings, Inc., which securitized the mortgage, held it in a trust (Lehman

XS Trust Series 2006-12N, for which U.S. Bank was the Trustee), and then resold it to a Merrill

Lynch trust (MLMI 2006-HE5). *Id.* ¶ 24. Because the loan was sold to a Merrill Lynch trust in

2006, Mr. O'Hara asserts that a purported 2011 Assignment of the mortgage from MortgageIT to

U.S. Bank was invalid. *Id.* ¶¶ 24, 27. He also alleges that MortgageIT failed to document any

transfer of the mortgage to U.S. Bank in the local land records. *Id.* ¶ 32. For these reasons, he

argues that U.S. Bank is not a "true part[y] in interest who can make any claim against Plaintiff's

Mortgage transaction" and does not have standing to enforce the note or the mortgage. *Id.* ¶¶ 28,

37.  He characterizes the mortgage documents (including the note, the mortgage, and the

assignment) as "falsely made, void *ab initio*, and slanderous," *id.* ¶ 33, accuses the law firm

defendants of filing "fraudulent documents" in the State Foreclosure Action, *id.* ¶ 35, and calls

that entire action a "fraudulent proceeding," *id.* ¶ 38.

Mr. O'Hara makes additional allegations of fraudulent activity. He avers that U.S. Bank

made misrepresentations to the plaintiff about the nature of his mortgage, telling him it was a

"traditional 'mortgage loan' consisting of a paper note and security instrument a/k/a 'mortgage,'"

when in fact the mortgage had been securitized and "fraudulently converted into Stock-like Bond

Investment Securities." *Id.* ¶¶ 26, 28. He claims that U.S. Bank "deliberately caused the original

'Promissory Note' . . . to be destroyed," and that there is no proof his brother, Francis O'Hara,

"ever electronically signed the 'electronic note' that was made part of the 'Mortgage.'" *Id.* ¶¶

29–30. Finally, he argues that the mortgage, assignment, and three versions of the original note

are "acts of forgery and counterfeiting of non-negotiable Security Instruments that are actually

Investment Securities." *Id.* ¶ 35.

## II.      LEGAL STANDARDS

The "pleadings of a *pro se* plaintiff must be read liberally and should be interpreted to

'raise the strongest arguments that they suggest.'" *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.

1996) (citing *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). A *pro se* complaint is "held to

less stringent standards than formal pleadings drafted by lawyers." *Bromfield v. Lend-Mor*

*Mortg. Bankers Corp.*, No. 3:15-CV-1103 (MPS), 2016 WL 632443, at *3 (D. Conn. Feb. 17,

2016).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it . . . . A plaintiff

asserting subject matter jurisdiction has the burden of proving by a preponderance of the

evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether

the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

pleaded factual content allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court

accepts the complaint's factual allegations as true, and "draw[s] all reasonable inferences in

favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*,

517 F.3d 104, 115 (2d Cir. 2008). "However, the tenet that a court must accept a complaint's

allegations as true is inapplicable to '[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements.'" *Gonzales v. Eagle Leasing Co.*, No. 3:13-CV-1565

JCH, 2014 WL 4794536, at *2 (D. Conn. Sept. 25, 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009)). "When a complaint is based solely on 'wholly conclusory allegations' and

provides no factual support for such claims, it is appropriate to grant defendants motion to

dismiss. *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004).

## III.    DISCUSSION

Defendants bring their motions to dismiss, ECF Nos. 10, 16, under Rule 12(b)(1) and

Rule 12(b)(6). Both memoranda rely primarily on abstention, arguing that this Court should

decline to exercise jurisdiction and dismiss the action on account of Mr. O'Hara's pending State

Foreclosure Action. I need not undertake an analysis of abstention factors, however, because Mr.

O'Hara fails to state a federal cause of action in his Complaint. Without any federal question

adequately pled, I dismiss the federal claims without prejudice and decline to exercise

supplemental jurisdiction over the state law claims.  I also provide Mr. O'Hara with an

opportunity to replead the federal claims within thirty days to address the deficiencies identified

herein.

### A.  Constitutional and § 1983 Claims

In Counts One, Two, and Four, Mr. O'Hara alleges violations of his constitutional rights,

citing the First, Fifth, and Fourteenth Amendments as well as 42 U.S.C. §§ 1983, 1985–86.

Defendants argue that these claims must be dismissed because the Defendants are not state actors for the purposes of constitutional or § 1983 liability. I agree. I also dismiss the claims under §§ 1985–86 because the facts alleged do not support them.[2]

"Because the United States Constitution regulates only the Government, not private parties, a litigant . . . who alleges that [his] constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 263 (2d Cir. 2014). "Title 42 U.S.C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 924 (1982). To state a claim under 42 U.S.C. § 1983, "the plaintiff must allege that the challenged conduct [] was attributable to a person acting under color of state law." *Whalen v. Cty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). "[T]he acts of private attorneys are not deemed to be under color of state law, and an otherwise private person acts under color of state law only if he or she conspires with state officials to deprive another of federal rights." *Kash v. Honey*, 38 F. App'x 73, 75–76 (2d Cir. 2002).

Mr. O'Hara makes only conclusory allegations of state action, stating that Defendants deprived him of his constitutional rights "through their Attorney Agents, who acted under Color of State Law, using their privilege as Officers of the Court to make claims against Plaintiff's property in the foreclosure action," and that the action as a whole was a "fraudulent proceeding

---

[2] The Defendants did not address Mr. O'Hara's claims under 42 U.S.C. §§ 1985–86 in their memoranda. *See* ECF Nos. 11, 16-1. Nevertheless, district courts possess the power to dismiss a complaint *sua sponte* if the claims are frivolous, *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000), so I conduct my own analysis of whether Mr. O'Hara has stated a claim under §§ 1985 or 1986.

under Color of State Law." Compl., ECF No. 1 ¶¶ 34, 38. In his objections, he reiterates the

allegations in the Complaint that "the Defendants used a State authorized foreclosure proceeding

under Color of Law to fraudulently deprive me of my Constitutionally protected rights."

Objection, ECF No. 27 at 8. He also argues that "[a]ttorneys admitted to the bar are officers of

the Court, and pursuant to [7 C.J.S. § 4], an attorney's first duty is to the court and the public, not

to the client . . . . Therefore, attorneys, whose first duty is as officers of the Court, are effectively

State Actors." Objection, ECF No. 23 at 3–4. But the Second Circuit has made clear that—

attorneys' duties to the Court notwithstanding—"the acts of private attorneys are not deemed to

be under color of state law," *Kash*, 38 F. App'x at 75–76, unless plaintiff alleges "facts

demonstrating that the private entity acted in concert with the state actor," *Spear v. Town of W.*

*Hartford*, 954 F.2d 63, 68 (2d Cir. 1992). Mr. O'Hara has alleged no such facts to suggest that

any of the Defendants, including any attorneys, contracted or conspired with any governmental

office or official.  Because a "merely conclusory allegation that a private entity acted in concert

with a state actor does not suffice to state a § 1983 claim against the private entity," Mr. O'Hara

fails to state a claim for any constitutional violation or for § 1983 liability.

Mr. O'Hara also cites 42 U.S.C §§ 1985–86, 1988 in his Complaint. *Id.* ¶¶ 1, 52

("invok[ing] the jurisdiction and venue of this Court for violations of Civil Rights per 42 U.S.C.

§§ 1983 . . . , 1985(3) . . . , 1986 and 1988" and alleging that defendants are "accountable for

violations of the Plaintiff's rights" under §§ 1983, 1985–86). The first two subsections of § 1985

are not implicated by the facts alleged. *Gilliam v. Black*, No. 3:18CV1740 (SRU), 2019 WL

3716545, at *16 (D. Conn. Aug. 7, 2019) ("Section 1985(1) prohibits conspiracies to prevent

federal officials from performing their duties and Section 1985(2) prohibits conspiracies

7

intending to deter witnesses from participating in state or federal judicial proceedings."). A conspiracy claim under § 1985(3) requires a plaintiff to allege:

> 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. The conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus.

*Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015). Mr. O'Hara pleads no facts suggesting any class-based discriminatory animus. Section 1986 imposes liability on persons who fail to prevent violations of § 1985; without a violation of § 1985, there can be no violation of § 1986. Section 1988 relates primarily to attorney's fees and does not create a substantive cause of action. Therefore, Mr. O'Hara does not state a claim under any of these sections of Title 42.

### B. Other Federal Statutory Claims

In Count One, Mr. O'Hara alleges that Defendants knew or should have known that their acts "to omit[,] avoid[,] or falsify the disclosure of documents and information required by law to be submitted were in violation of TILA, FDCPA, FTCA and clearly established precedent case laws." Compl., ECF No. 1 ¶ 53; *see also id.* ¶ 6 (asserting that the Court has jurisdiction under a variety of federal statutes, including the False Claims Act, the Fair Debt Collection Practices Act, the Truth in Lending Act, and "the laws governing The Securities Exchange Commission under Title 15 of the United States Code"). The Defendants do not address any of these claims directly in their briefing, focusing instead on the issue of abstention. Nonetheless, I find that Mr. O'Hara has failed to state a claim under any of these federal statutes.

#### 1. Federal Tort Claims Act (FTCA)

The FTCA establishes tort liability for the United States and its agents. 28 U.S.C. § 2674. As discussed above, the facts alleged do not suggest that any of the Defendants in this action

were acting as agents of the United States or any other government. Mr. O'Hara therefore does not state a claim under the FTCA.

### 2. *False Claims Act (FCA)*

The False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, does provide a substantive right of action, but Mr. O'Hara makes no further mention of the statute in his Complaint other than listing it as a basis for jurisdiction. Compl., ECF No. 1 ¶ 6. He does not refer to it in any of his Counts, and does not make any particular allegations of false claims submitted to the Government for payment. He does not state any claim under the FCA.

### 3. *"[L]aws governing The Securities Exchange Commission"*

Mr. O'Hara's reference to "the laws governing The Securities Exchange Commission" is not sufficient to state any federal cause of action. Mr. O'Hara does not point to a violation of any particular provision of federal securities laws or regulations and alleges only in vague terms that the Defendants "fraudulently converted [his mortgage] into Stock-like Bond Investment Securities." He makes no factual allegations of misrepresentations in SEC filings or to investors, and he alleges no facts showing how he was injured by the alleged "fraudulent[] conver[sion]" of his mortgage into an investment security. *Id.* ¶ 28. Without any specific factual allegations and without reference to any particular provision of securities law, I need not engage in "rank speculation[] to manufacture a federal claim," and I find that Mr. O'Hara has not stated any claim under federal securities law. *Gonzalez v. Option One Mortg. Corp.*, No. 3:12-CV-1470 CSH, 2014 WL 2475893, at *5 (D. Conn. June 3, 2014).

### 4. *Truth in Lending Act (TILA)*

"TILA provides a cause of action for consumers to obtain actual or statutory damages for a creditor's failure to comply with its disclosure requirements." *Derisme v. Hunt Leibert*

*Jacobson P.C.*, 880 F. Supp. 2d 311, 333 (D. Conn. 2012); 15 U.S.C. § 1640(a). Mr. O'Hara's

complaint does not identify any particular provisions of TILA violated by any of the Defendants,

alleging only generally that U.S. Bank "misrepresented" the nature of the mortgage transaction

in 2006 "while omitting and concealing from Plaintiff that Defendant [U.S. Bank] converted" the

mortgage transaction into a "Securities transaction in order for Defendant [U.S. Bank] (and other

Lehman Brothers related entities) to create Mortgage Backed Securities ("MBS"), Collateralized

Debt Obligations ("CDO"), and derivatives." Compl., ECF No. 1 ¶ 26. These allegations do not

identify any particular misrepresentation at the time Mr. O'Hara signed the mortgage in May

2006, and they are in any event contradicted by the Mortgage Deed, which is attached to the

complaint and which states that "[t]he Note or a partial interest in the Note (together with this

Security Instrument) can be sold one or more times without prior notice to Borrower." Mortgage

Deed, ECF No. 1 at 43; *see Best v. Schneider*, No. 12-CV-6142, 2015 WL 5567062, at *24

(E.D.N.Y. Sept. 21, 2015) ("While the court must accept as true all well pleaded, nonconclusory

allegations of fact in Plaintiff's Amended Complaint, the court does not credit conclusory

allegations that are contradicted by the documents he attaches to the Amended Complaint."); *see

also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a

part of the pleading for all purposes."). Mr. O'Hara's allegations also do not state a claim

regarding any lack of disclosure at the time his mortgage loan was sold, later in 2006. Regulation

Z was amended in 2009 to require certain disclosures when a mortgage loan is "sold, assigned or

otherwise transferred," but the amendment is not retroactive. *Ledgerwood v. Ocwen Loan

Servicing LLC*, No. 15 CIV. 1944 (BMC), 2015 WL 7455505, at *4 (E.D.N.Y. Nov. 21, 2015);

12 C.F.R. § 226.39.  Since Mr. O'Hara alleges that his loan was sold to Lehman Brothers and

pinpoint

then to Merrill Lynch "before year end 2006," he has not stated a claim for a violation of

Regulation Z.

Moreover, any TILA claims that Mr. O'Hara could have are time-barred. TILA provides

that "any action under this section may be brought . . . within one year from the date of the

occurrence of the violation." 15 U.S.C. § 1640(e). Mr. O'Hara signed his note and mortgage in

May 2006, over 12 years before he filed this complaint. Compl., ECF No. 1 ¶ 21.[3] While Mr.

O'Hara may be permitted to assert any TILA violations as a defense "in an action to collect the

debt"—*i.e.*, in his State Foreclosure Action—he cannot bring affirmative TILA claims at this

point. 15 U.S.C. § 1640(e).

### 5.  *Fair Debt Collection Practices Act (FDCPA)*

Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading

representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

Mr. O'Hara's FDCPA-related allegations are that "Defendant(s) who are Debt Collector Agents

filed fraudulent documents," Compl., ECF No. 1 ¶ 35, that "the Defendant Attorney Debt

Collector Agents" made false representations by referring to Mr. O'Hara's "Note" and

"Mortgage" when in fact such instruments were converted to "Stock-like Bonds," *id.* ¶ 36, and

that "Defendant Agents and Defendant Attorney, who are Debt Collector's [sic], acted to

deliberately implement, facilitate and even sign the fraudulent foreclosure Complaint on behalf

---

[3] Although the "lapse of a limitations period is an affirmative defense that a defendant must
plead and prove," the statute of limitations may be addressed "in a pre-answer Rule 12(b)(6)
motion if the defense appears on the face of the complaint" or in "matters judicially noticed."
*Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425–26 (2d Cir. 2008). Here, the lapse of
the limitations period for Mr. O'Hara's TILA claims is evident on the face of his complaint.
Further, Mr. O'Hara has been on notice of Defendants' claims against him since at least 2013,
when the State Foreclosure Action began, and has not pled any facts suggesting that any tolling
doctrines apply. Because I dismiss his claims without prejudice, however, Mr. O'Hara will have
the opportunity to allege any facts supporting tolling doctrines in his amended pleadings.

of the Defendant(s)," *id.* ¶ 52. Based on these allegations of fraud, he asserts that Defendants

violated §§ 1692e(5), e(9), e(10), e(12), and e(13), as "only a few of the egregious violations" by

Defendants. *Id.* ¶¶ 43–44. The only mention of his FDCPA claims in his objections restates the

allegation that "defendant violated the plaintiff's rights as defined by FDCPA," and lists some

additional provisions of the statute not mentioned in his complaint. Objection, ECF No. 27 at 8

(citing 15 U.S.C. §§ 1692(a), 1692a(3), 1692g(a)(5), and 1692k(d)).

Mr. O'Hara does not point to any specific communications with any of the Defendants

that were false, deceptive, or misleading. Rather, his allegation seems to be that the State

Foreclosure Action itself and its associated filings are fraudulent because the underlying note and

mortgage were actually converted into "Stock-like Bonds," *id.* ¶ 36, because the documents the

Defendants presented as the original note in the State Foreclosure Action are not authentic, *id.* ¶

33, and because U.S. Bank lacks standing to enforce the note or mortgage. *Id.* ¶¶ 28, 37.

Mr. O'Hara has not adequately alleged either that the Defendants qualify as "Debt

Collectors" or that their conduct constitutes debt collection as those terms are defined under the

FDCPA. Section 1692a(6) defines "debt collector" as "any person who uses any instrumentality

of interstate commerce or the mails in any business the principal purpose of which is the

collection of any debts, or who regularly collects or attempts to collect, direct or indirectly, debts

owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6); *Henson v. Santander*

*Consumer USA Inc.*, 137 S. Ct. 1718, 1721, 1724 (2017) ("[B]y its plain terms this language

seems to focus our attention on third party collection agents working for a debt owner—not on a

debt owner seeking to collect debts for itself."). Mr. O'Hara has not alleged that the "principal

purpose" of any Defendant is to collect debts owed to another nor any other facts supporting his

conclusory references to Defendants as "Debt Collectors." *See Yeboah v. Bank of Am., N.A.*, No.

3:18-CV-2020 (VAB), 2019 WL 3388045, at *12 (D. Conn. July 26, 2019) (dismissing FDCPA

claim of plaintiff who "allege[d] no facts to support her conclusory allegation that Bank of

America is a 'debt collector' as that term is defined by the FDCPA") ; *see also Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic

recitation of the elements of a cause of action will not do.") (internal quotation marks omitted).

Moreover, courts in this District are skeptical "whether the FDCPA applies to an action

of foreclosure." *Moorer v. U.S. Bank N.A.*, No. 3:17-CV-56 (VAB), 2018 WL 587319, at *13

(D. Conn. Jan. 29, 2018) (dismissing FDCPA claims against U.S. Bank and its counsel). Section

1692e of the FDCPA provides that "[a] debt collector may not use any false, deceptive, or

misleading representation or means in connection with the collection of any debt." 15 U.S.C. §

1692e. Interpreting this provision as applied to Connecticut foreclosure proceedings, courts have

found that when mortgagees bring a foreclosure action in Connecticut state court, "they [a]re not

seeking a money judgment" but are "instead seeking to enforce their security interest in [the

foreclosure defendant's] property." *Moorer*, 2018 WL 587319, at *13; *see also Derisme*, 880 F.

Supp. 2d at 325 (in a lawsuit against a law firm representing a mortgagee, finding that "an action

seeking foreclosure under Connecticut law should be considered the enforcement of a security

interest as opposed to an action to collect a debt" and that "foreclosing on a mortgage does not

qualify as debt collection activity for purposes of the FDCPA").[4] Because Mr. O'Hara has not

---

[4] These cases note that the FDCPA may "apply in a Connecticut foreclosure proceeding once a timely filed motion for deficiency judgment pursuant to [Conn. Gen. Stat.] § 49-14 has been made." *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 311, 326 (D. Conn. 2012). However, "until the party seeking foreclosure makes a timely motion for a deficiency judgment, a strict foreclosure action is solely an action to enforce a security interest at equity." *Moorer v. U.S. Bank N.A.*, No. 3:17-CV-56 (VAB), 2018 WL 587319, at *14 (D. Conn. Jan. 29, 2018). To date, neither U.S. Bank nor any other Defendant has sought a deficiency judgment against Mr. O'Hara in the State Foreclosure Action because the foreclosure judgment itself is still open and pending. *U.S. Bank Nat'l Ass'n, as Trustee for the LXS 2006-12N v. O'Hara*, Superior Court,

13

identified any particular, material misrepresentations by a debt collector, and because

"foreclosing on a mortgage does not qualify as debt collection activity for purposes of the

FDCPA," Mr. O'Hara has not stated a claim under the statute. *Derisme*, 880 F. Supp. 2d at 325;

*Yeboah v. Bank of Am., N.A.*, No. 3:18-CV-2020 (VAB), 2019 WL 3388045, at *13 (D. Conn.

July 26, 2019) (dismissing plaintiff's § 1692e claims for failing to plead that the mortgagee-

defendant was a "debt collector" and failing to allege that the servicer-defendant made any false

representations that were material so as to impede mortgagor's ability to pay or challenge the

debt incurred).

### 6. *Federal Criminal Statutes*

In the section of his complaint addressing jurisdiction, Mr. O'Hara lists a number of

federal criminal statutes. Compl., ECF No. 1 ¶¶ 4, 6. These statutes are not mentioned again and

are not included in any of the Counts. In any event, "[a] private individual may bring suit under a

federal statute only when Congress specifically intended to create a private right of action. . . .

As a general matter, we have long recognized that crimes are prosecuted by the government, not

by private parties." *Hill v. Didio*, 191 F. App'x 13, 14–15 (2d Cir. 2006). Most of the criminal

statutes Mr. O'Hara cites indeed do not provide any private cause of action:

- "18 U.S.C. § 1312" does not refer to any valid statutory provision. There is no § 1312 in Title 18.

- 18 U.S.C. 1341, the "Mail Fraud statute," does "not create a private right of action." *Silva v. Neumel*, 152 F.3d 920 (2d Cir. 1998).

- 18 U.S.C. § 1511 addresses obstruction of justice, which does not provide a private cause of action. *Brown v. State Farm Fire & Cas. Co.*, No. 3:11CV1435 JBA, 2013 WL 951726, at *3 (D. Conn. Mar. 12, 2013) (citing *De Haven v. Schwarzenegger*, 123 F. App'x 287, 289 (9th Cir. 2005)).

---

Judicial District of Stamford, No. FST-CV13-6020232-S,
http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=FSTCV136020232S.

- 18 U.S.C. § 241–42 "do not provide for a private right of action." *Powers v. Karen*, 768 F. Supp. 46, 51 (E.D.N.Y. 1991), *aff'd,* 963 F.2d 1522 (2d Cir. 1992).

- 18 U.S.C. § 2311, 2314–15, provisions of the National Stolen Property Act, do not specifically authorize a private, civil cause of action. *See Louis v. Jerome*, No. CV 15-3094, 2016 WL 4532115, at *3 (E.D.N.Y. Aug. 29, 2016) (dismissing claims brought under the National Stolen Property Act because the statute does not authorize a private right of enforcement).

- 18 U.S.C. § 471–74 relate to securities fraud and do not provide a private right of action. *Kloth-Zanard v. Bank of Am.*, No. 3:15-CV-1208 (MPS), 2017 WL 4927657, at *4 (D. Conn. Oct. 31, 2017).

Mr. O'Hara also mentions 18 U.S.C. §§ 1961, 1967, which are provisions of the Racketeer Influenced and Corrupt Organizations (RICO) Act. Congress did create a private right of action under RICO, 18 U.S.C. § 1964(c), but Mr. O'Hara has not alleged the existence of an "enterprise," any "pattern of racketeering activity," or any predicate acts. *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004) (finding that a complaint failed to sustain a RICO claim when predicate acts were not sufficiently pled). Therefore, Mr. O'Hara has not stated a claim under any of the criminal statutes he cites.

### C. Other Bases for Subject Matter Jurisdiction

After the constitutional and federal statutory claims are dismissed, Mr. O'Hara's complaint no longer presents any valid basis for federal subject matter jurisdiction. The first section of the complaint asserts that jurisdiction is based on federal question jurisdiction (28 U.S.C. § 1331) and violations of the Constitution and the federal statutes discussed above; these paragraphs further allege jurisdiction based on the Uniform Commercial Code, and 28 U.S.C. §§ 1337, 1343(a), and 1367(a). Compl. ECF No. 1 ¶¶ 1–7. His complaint later asserts that this Court has power under "Section 13(b) of the Fair Trade Commission's Act, 15 U.S.C. § 53(b)" to grant injunctive and other relief. *Id.* at 24. Mr. O'Hara does not allege diversity jurisdiction under 28 U.S.C. § 1332 or any other basis for federal subject matter jurisdiction.

None of the provisions he cites supports federal subject matter jurisdiction. The Uniform Commercial Code must be adopted by a state to become law, at which point its provisions can be enforced under state law. 28 U.S.C. § 1337 gives federal courts jurisdiction over civil actions "arising under any Act of Congress regulating commerce," but Mr. O'Hara does not state any claims arising under any federal law. 28 U.S.C. § 1343(a) gives federal courts jurisdiction over actions brought under 42 U.S.C. § 1985; as discussed above, Mr. O'Hara does not state a claim under § 1985. 15 U.S.C. § 53(b) empowers the Federal Trade Commission to bring suit in federal district court but does not create any private right of action.

28 U.S.C. § 1367 permits federal courts to exercise supplemental jurisdiction over state law claims "in any civil action of which the district courts have original jurisdiction." Section 1367(c)(3) specifically instructs that district courts "may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction." The Second Circuit has counseled that "where, as here, the federal claims are eliminated in the early stages of litigation, courts *should* generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) (emphasis added).

## D. Improper Service on MortgageIT, Citibank, and Leopold & Associates

As noted above, Defendants MortgageIT, Citibank, and Leopold & Associates have not appeared in this case. Mr. O'Hara filed on the docket Proof of Service for each of these Defendants, ECF Nos. 19–20, but the method of service used was not proper under Fed. R. Civ. P. 4(h). Under Rule 4(h), corporations, partnerships, and associations must be served by delivering a copy of the summons and complaint to an officer or agent of the entity or by following state law for serving a summons. Fed. R. Civ. P. 4(h)(1)(B); 4(e)(1). Connecticut law

permits service on a corporation by leaving a copy of the process with the registered agent or by leaving it at such agent's usual place of abode in the state. Conn. Gen. Stat. § 33-663(a). If the corporation has no registered agent in Connecticut, it may be served by sending a copy of the process to the secretary of the corporation at its principal office. § 33-663(b). Simply mailing process, addressed to the entity, to business locations of MortgageIT in New York, ECF No. 19 at 7–8, and Citibank in South Dakota, *id.* at 5–6, was therefore improper service. A "voluntary association," such as a professional limited liability company, may be served upon an in-state presiding officer, secretary, or treasurer, or upon the Secretary of State if none of the officers are Connecticut residents. Conn. Gen. Stat. § 52-57(e). Mailing process to Leopold & Associates at its Stamford location, ECF No. 20 at 5–6, was therefore improper as well. In short, Mr. O'Hara's filings with the Court fail to include adequate proof that these non-appearing Defendants were served in accordance with Rule 4. Fed. R. Civ. P. 4(l) ("Unless service is waived, proof of service must be made to the court."); *see also JCJ Marketer Corp. v. Tierra Nueva Organic, Inc.*, No. 09-CV-1487 NGG, 2010 WL 1292713, at *3 (E.D.N.Y. Mar. 31, 2010) (finding affidavit of service invalid for failing to specify which, if any, of defendant corporation's officers or agents accepted process).

Under Fed. R. Civ. P. 4(m), Mr. O'Hara was required to serve these Defendants by January 7, 2019. Therefore, Mr. O'Hara shall show cause within thirty days of this ruling why the claims against these non-appearing Defendants should not be dismissed for improper service.

## IV.    CONCLUSION

For the reasons stated above, the Defendants' motions to dismiss, ECF Nos. 10, 16, are GRANTED, and Mr. O'Hara's federal and state claims are DISMISSED without prejudice.

When evaluating *pro se* complaints, "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). However, if repleading a claim would be futile, the court should not grant leave to amend. *Id.*; *Hunt v. Alliance N. Am. Gov't Income Trust*, 159 F.3d 723, 728 (2d Cir. 1998). Here, I grant Mr. O'Hara leave to amend within thirty days to address the defects in his federal claims identified in this ruling. Alternatively, Mr. O'Hara may choose to bring his state law claims in state court.

Finally, as noted above, Mr. O'Hara shall show cause within thirty days why the claims against the non-appearing Defendants should not be dismissed for improper service.

IT IS SO ORDERED.

_____/s/_____

Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              September 24, 2019

18